## GENERAL COURT, OCTOBER TERM, 1799.

### DAVIDGE *vs.* CHANEY.

REPLEVIN for negro slaves. CASE STATED.

It was admitted that *Robert Davidge*, being in his lifetime possessed of two negro slaves, viz. *Moll* and *Fanny*, as his own proper slaves, by his will, dated the 3d of June 1769, made the following bequest: "Item, I give "and bequeath unto *Joshua Yates*, the son of *Eleanor* "*Yates*, during his natural life, one negro woman named "*Moll*, and her daughter *Fanny*; but in case the said "*Joshua Yates* should die without lawful issue, my will is "that the said two negroes, with all their issue, shall be "the property of my son, *John Davidge*, and his heirs."

That *John Davidge*, the son of the testator, and the executor named in the said will, after the death of the testator, took out letters testamentary upon the estate of the said *Robert*, and delivered the said negro slaves, *Moll* and *Fanny*, to the said *Joshua Yates*, in the said will mentioned, who received the same in his possession in the year 1769, and continued to hold them, and their issue, until his death in the year 1790. That the negro slaves in the writ and declaration in this cause mentioned, are the same persons mentioned in the said will, and their issue, viz. the children and grandchildren of the said *Moll* and *Fanny*. That the said *Joshua Yates* died on or about the 1st of January 1790, intestate and without issue, leaving a widow *Frances Yates*, who obtained letters of administration on his estate, and possessed herself of the said negro slaves. That *John Davidge*, the son and executor of the testator, died on or about the 1st of January 1793, and that *Oner Davidge* was the executrix of the said *John Davidge*. That the plaintiff, after the death of the said *John Davidge*, to wit, on the 1st of January 1794, obtained letters of administration *de bonis non*, on the estate of the said *Robert Davidge;* and after the death of the said *Oner Davidge*, the plaintiff on the 1st of January 1795, obtained letters of administration *de bonis non* on the estate of the said *John Davidge*. That the said *John Davidge* did not further administer the said negro slaves,

Oct. 1799.

Davidge
vs.
Chaney.

than by delivering them to the said *Joshua Yates* as afore-said; and that the said *Oner Davidge* never did at any time administer the said negro slaves as the personal es-tate of the said *John Davidge*. And that the defendant took the said negro slaves as stated in the declaration, &c. This action was brought by the plaintiff as admi-nistrator *de bonis non* of *John Davidge*.

*Key* and *Shaaff*, for the plaintiff.

*Mason* and *Johnson*, for the defendant.

*Johnson*, for the defendant. The question is, whether the remainder over to *John Davidge* is good? It re-solves itself into *three points:*

1st. An executory bequest or devise, *on failure of issue*, is void.

2d. Where there are words *to limit the failure of issue* to a life in being, the devise over is good.

3d. In this case there is nothing to confine the gene-ral import of the words *on failure of issue*; but the be-quest over was only to take place on an indefinite failure of issue, therefore void. ,

Executory devises cannot be defeated, and therefore ought to be restricted, otherwise they would create per-petuities. By the old law, the gift or bequest of person-al property for a moment, vested the whole interest. *Manning's* case, (8 *Coke*, 96,) first admitted personal property to be bequeathed for life, with a remainder; and that the tenant for life could not defeat the remain-der. Prior to that case it had been determined that per-sonal property could not be limited for life, with a re-mainder. But if the person who claimed the life estate aliened the term he defeated the remainder—2 *Blk. Com.* 174. *Manning's* case determined the devisee for life had no power of defeating the remainder. It is not material to know when the old law was changed. It is now clearly established that a remainder by way of executo-ry devise or deed of trust, may be limited on a chattel interest, with certain restrictions; but I contend, not *on failure of issue generally.*

FIRST POINT. 1 *Lev.* 290, *Love vs. Windham*, is in point, that a devise of a term on failure of issue is void. *Pollex.* 29, *Pearse vs. Reeve*—Limitation of a term to R. during *his life*, and if *he die without issue*, remainder over. Held to be void. 1 *Ld. Raym.* 523, *Badger vs. Lloyd*—The court agreed that an executory devise, *on failure of issue*, was void. 2 *Atkyns*, 308, 312, *Beauclerk vs. Dormer*—Lord *Hardwicke* held that a limitation over of personal estate, after the death of the first taker *with-out issue generally*, was void. The court observed on the word *then*, and from that word attempted to *restrict the*

*issue. Fearne Con. Rem.* 366, 367—a devise over, *after failure of issue generally,* is void. *Fitz. Gibb.* 68. 2 *Vez.* 181, *Stafford vs. Buckley*—Limitation of a term or personal estate, to take effect after failure of *heirs of the body,* or dying *without issue,* without other restriction, is too remote, and therefore is void. 2 *Atk.* 376, *Saltern vs. Saltern*—Limitation over without words of restriction to confine it to the death of the first taker, is not good. There is no such rule that a devise to a man generally of a chattel interest, and if he die without issue, remainder over, that it shall be construed to mean a dying without issue at the time of his death. 3 *Atk. Sheffield vs. Orrery and others*—It is clear and certain, that no limitation over of *personal* property, after a dying *without issue* generally, can be admitted. *Ca Temp. Tal.* 262; *Fearne Con. Rem.* 322, 325, 341, establishes the same principle. 2 *Bac. Ab.* 76, 77, confirm the principle. 2 *Fearne Con. Rem.* 159—An executory devise, after an indefinite failure of issue, though good if restrained to failure of issue within 21 years after a life in being, yet if not so restrained in its creation cannot be eventually supported by a qualification of that sort *in its creation.* 1 *Burr.* 273—Limitation over of a personal chattel, after dying without issue generally, is void. The rule unquestionably is, that there can be no executory devise after an indefinite failure of issue.—2 *Fearne Con. Rem.* 221. The authorities on the *second point* clearly establish the first position. They are all determined on particular expressions in the will; are exceptions to, and confirmatory of, the general principle.

SECOND POINT. Where there are expressions to limit the word *issue,* the remainder is good. *Pell vs. Brown, Cro. Jac.* 590—This case is said by Lord *Kenyon,* in *Porter vs. Bradley,* (3 *T. R.* 143,) to be the *magna charta* of this branch of the law. In this case there was a devise to B. and if he died without issue, *living* A, then A. to have, &c. It was adjudged that B. took a vested fee simple, and that the limitation over to A. was good as an executory devise to take effect on B's dying without issue in the lifetime of A. Here the remainder was good on the word *living* A. Particular expressions have been construed to limit the taking over to a dying without leaving issue living at the time of his death. *Forth vs. Chapman,* 1 *P. Wms.* 663—Devise over, if the first devisee should depart this life *leaving no issue,* was held to be good; for the words *leaving no issue* must be restrained to *leaving no issue at the time of his death.* 2 *Atk.* 313, shews the ground of the determination in *Forth vs. Chapman,* and in *Fearne,* 363. The conclusion is drawn from the same case. *Atkinson vs.*

OCT. 1799.

Davidge
vs.
Chaney.

*Hutchinson,* 3 *P. Wms.* 259, also determined on the word *leaving.* So also 2 *T. R.* 720, and shews the ground of the decision in 1 *P. Wms.* 663. And also in 3 *T. R.* 143, on the words *leaving no issue behind him.* From the word *leaving,* the court, in all these cases, construed it *leaving no issue living at his death,* and confirm the distinction in the case of *Forth vs. Chapman,* 1 *P. Wms.* 663. *Target vs. Gauntt,* 1 *P. Wms.* 432—Devise to *A for life and no longer,* and after his decease, *to such of the issue of A,* as *he by his will should appoint,* and in case he should die without *such issue,* remainder over. Held to be good. For by the word issue shall be construed *such* as he *could appoint;* consequently the remainder must have taken place *immediately* after *his death. Maddox vs. Stains,* 2 *P. Wms.* 422—The word issue restricted by the word *children,* and establishes the principle that a devisee on a *general failure* of issue is void. *Co. Litt.* 20. *a.* (Note 5,) speaks highly of *Fearne's Con. Rem.* says that it is a work so very instructive on the dry and obscure subject of remainders and executory devises, that it cannot be too much recommended to the attention of the diligent student. *Fearne Con. Rem.* 372—The conclusion he draws from all the cases is, that words in a will, indicating an intent to restrict the generality of the expression, dying without issue, will make the limitation over good. 2 *Fonb.* 326, of the same opinion.

From the authorities I trust it clearly appears, that a devise on failure of issue generally, is void; but that the court will avail itself of any expression to confine the general meaning.

THIRD POINT. Are there any restrictive words in the will of *Robert Yates,* so as to confine its meaning to issue *living at Joshua Yates's death?* That the testator did not intend the negro slaves should go over, unless on a general failure of issue, is evident. For to give a different construction would have deprived a grandchild, if its father died during the life of *Joshua Yates.* But here it does not depend alone on the general words; for if he did not mean a *total failure* of issue, the *grandchildren* of the negro women would *not pass over.* By what rule must we construe the issue of *Joshua Yates* to *children,* and not give the same construction to the same word when applied to the *negro slaves?* The cases which have been determined are all, by construing *issue* to mean *children* living at the death of the first devisee. Indeed the case of *Maddox vs. Stains,* 2 *P. Wms.* 422, was determined on the word *children;* for whether she would leave children would appear at *her death.*

*Key,* for the plaintiff. *Manning's* case, 8 *Co.* 96, is the

first decision upon the question. Courts are only re- strained by positive rules of law; and they will lay hold of any circumstances to make the limitation over good. The words in this will shew the intention of the testator, and that he never contemplated a dying without issue indefinitely. *Fearne Con. Rem.* 322, 323, 341—the law is here laid down generally. The distinction is subtle between the words *dying without issue*, and *leaving no issue*. This shews that courts are determined to carry the intention of the testator into effect. *Fearne Con. Rem.* 366—The words "in manner aforesaid," referred to the general li it ition without issue, or the word "then" would have been laid hold on. 2 *Vez.* 181. 2 *Atk.* 376. 3 *Atk.* 287, are all on an indefinite failure of issue. There are words in the will indicative of a failure of issue at the time of the death of *Joshua Yates.* There is an express estate for life given to him; and the subsequent words operate to enlarge the estate by way of implication. Could the testator mean that negroes *Moll* and *Fanny* were to go over on an indefinite failure of issue? There was no probability that *Moll* or *Fanny* would outlive *Joshua Yates. Fearne Con. Rem.* 352— Though an executory devise, to vest on a dying *without issue generally,* is void, because too remote, yet where the dying without issue is restrained to the period of a life in being, an executory devise thereon limited will be good. The devise for life to *Joshua Yates,* and after his death without issue, the original stock over, are strong circumstances to shew the testator could not mean an indefinite failure of issue. *Fearne Con. Rem.* 368—restrained on the circumstance that the executor should distribute. The testator has used general words. In case of his dying *without issue living at the time of his death,* must have been his intention, because *Moll* and *Fanny* were to go over. *Fearne Con. Rem.* 372—Where a personal estate is limited to one *for life expressly,* and if he die *without issue,* remainder over, such remainder over is good; because the express estate for life shall not be enlarged by mere words of implication—1 *Eq. Ab.* 362, *pl.* 12. In *Doe vs Perryn,* 3 *T. R.* 494, it is said by *Buller,* J. that the words *dying without issue* have been frequently held to mean *without issue at the time of the death of the party,* in cases of personal property, but not in limitations of freehold estates—there seems no difference in the construction of the words dying without issue, or words to that effect, when applied to *real* or *personal* property—3 *T. R.* 146.

CHASE, Ch. J. The court are of opinion, that where the words in a will would create an estate-tail in lands

Oct. 1799.

Davidge
vs.
Chaney.

either expressly or by implication, that the limitation over of personal property is not good, unless indefinite expressions, dying without issue, or heirs of his body, are restricted by some expressions or words in the will indicative of an intention that the first estate should cease on the first taker's dying without *leaving issue at the time of his death.*

JUDGMENT upon the case stated for the defendant. *(a)*

## GENERAL COURT, OCTOBER TERM, 1799.

---

*(a)* OPINION of the late *Daniel Dulany,* Esquire, upon the same question.

"I am of opinion, that the limitation to *T. B. Hodgkin* is good. There are a great variety of cases on this subject; and general rules have been laid down by reporters, where the determinations have been on the particular penning of wills. Where there is a limitation over of personal estate *upon a dying without issue,* unless there be some words in the will to *restrain* the meaning to a dying without issue *living* at the death of the person to whom the bequest is first made, the limitation over is void; for where the words of the will are general and unrestrained, *issue* is *nomen collectivum,* and *ex vi termini* takes in the whole question. In the case of *Pinbury* and *Elkin,* the chancellor construed the words *after* her decease, as *at* her decease, and relative to the decease. The case of *Atkinson* and *Hutchinson,* was of a term for life, remainder to the children *A. shall leave at his death,* &c. The whole bequest was coupled, and on the particular penning of the will, the devise over was held good by Lord *Talbot.* In the case of *Forth* and *Chapman,* the words were, if the nephews should die and *leave* no issue, &c. which Lord *Macclesfield* said related to the *time of their deaths.* In the case of *Nicholls* and *Hooper,* the words were, *to be paid within six months after the death of the survivor,* &c. which restrained it to a dying without issue *at the time of the death.*

In the case of *Beauclerk vs. Dormer,* the above cases, and many. others upon the same head, are remarked upon by Lord *Hardwicke,* whose opinion is, that a *dying without issue,* without some restriction. arising from the words of the will, are not to be understood *dying without issue living,* &c. and he observed, that he did not know of one instance of it, and cited the case of *Green* and *Rod* against it. But upon the particular penning of the present will, I think it pretty clear, that the limitation over is good. The bequest for life to T. B. and *after* his decease to any child he should have, and *in case of his death without issue,* &c. *i. e.* without having any child. By the plain words of the will immediately upon, or *at* the decease of T. B. such child would take, and in case of no such child to take, then *T. B. Hodgkin* was to take, so that his taking depended upon T' B's. having no issue to take, *i. e.* having no issue *living* at the time of his decease."